DWAYNE MORRIS Good morning, Your Honors, and may it please be good morning. My name is Don McPhail. I'm from the firm of Dwayne Morris, and I represent the appellant BEYOND INNOVATION TECHNOLOGY CO. LTD., which we usually refer to shortly as BITECH. BITECH's brief before you raises three different issues on appeal. Significantly, none of these issues will require you to make new law or to deviate from any of your existing precedent, and I'd like to start, if I could, by addressing the infringement issue first. For BITECH to prevail on the infringement issue, you need to be convinced of two things, that as of April 2007, there was no longer a direct infringer of O2 MICRO's patents, and that because there was no longer a direct infringer, the district court abused its discretion by granting an injunction in the absence of any evidence of ongoing or potential future infringement. Why don't we have two direct infringers? BITECH is not a direct infringer here for two reasons. One, BITECH does not sell, make, or use any products in the United States. I understand that, but we're talking about Samsung and LG. Samsung, based on both its violation of the, I think it's the fourth clause in the settlement agreement that it had by importing infringing materials. There's no evidence, and there was never evidence raised, that Samsung ever violated the abide by clause, the fourth clause of its settlement agreement. The only evidence of direct infringement by Samsung, and this is in the record, was five purchases of Samsung monitors made by Samsung in 2004 by their employee Mark Cram, and it was those five monitors that were the basis for the suit against BITECH and the suit against Samsung. Did those monitors have infringing materials? As the court found, the court found those monitors did contain infringing BITECH chips. Why isn't that direct infringement? That was direct infringement. In 2007, Samsung took a, got a covenant not to sue, an unrestricted infringement halted. If this was a case where we were talking about past damages, it might be of the moment that there was a past infringement, but this was a case where O2 Micro only sought an injunction, and an injunction can only be used to prevent ongoing or potential future infringement. But that's a question, is it not, whether or not, I mean, you just sort of slipped by the notion that a covenant not to sue is just like a license, but that's an argument that's I'm relying on this court's opinion in trans court on exactly that point, where a covenant not to sue was held to be, at least for purposes of patent exhaustion, the same as a license, relying on the Supreme Court's decision in quanta. And here, if O2, sorry, if Samsung has a covenant not to sue, it is an authorized party. And its sales of goods are authorized. It cannot be a direct infringer under 271A then, if it's an authorized seller. And without a direct infringer by the law of this court and the Supreme Court, there cannot be an indirect infringer. There can be no inducement without direct infringement. But why was Samsung authorized if they did not abide by the abide by clause? First of all, that's a contractual issue between Samsung and O2. The covenant not to sue that they received is unqualified, unrestricted. It is, it appears as subparagraph D under the sales agreement. There is nothing in that covenant not to sue that says, provided that Samsung abides by the rest of the terms of this agreement, then we will not sue them. It is an unqualified, naked covenant not to sue on the patents. So if Samsung was violating some other provision, then it was up to O2 to take that in contract and fight the contract. But they are violating the terms of the abide by clause if they don't adhere to the terms of the injunction, right? Now you get to the issue of when are we talking about in time. There was an injunction in 2007. This court, two members of this panel actually vacated that injunction in 2008. So at least by the time this case was back for trial in Judge Everingham's court in 2009, there had been no infringement because there was no injunction in place and hadn't been for over a year. There was nothing for Samsung to have to abide by at that point in time, even if they could have proved that Samsung was buying bi-tech chips, which was never put forth. What about LG? There was never any evidence of any LG product. Why can't we follow our Lucent versus Gateway reasoning that it was more likely than not? Look, LG sells most of its products into the United States. They contain the bi-tech chip. Even if they didn't tear one down and prove that, isn't it more likely than not that one person somewhere in the United States had indeed infringed by buying? I don't think that necessarily follows. Companies do not spread their products out throughout the world. They tend to make classes of products that go to specific jurisdictions, specific areas. They'll make a class of refrigerators that go to Europe versus the United States. LG buys chips from lots of people, including O2 Micro, including a company called MPS, Micro Semi. It is perfectly plausible that whatever chip they may have bought from bi-tech in the past went somewhere other than the United States. Interestingly, O2 had no problem going out and buying Samsung monitors with these chips in it, but they were never able to find an LG monitor, an LG product with a bi-tech chip in it. The district court didn't make any findings. No, the district court did not make a finding that LG was an infringer. The only finding the district court made was that LC, which is a module maker, and SPI modules with bi-tech chips had been sold overseas to Samsung and to LG, but there was never any finding of fact or conclusion of law relating to LG being a direct infringer in this country. Samsung is not liable for infringement by virtue of this agreement, of this covenant not to sue that they have, but they did infringe, and why isn't that sufficient for purposes of providing the direct infringement premise for an inducer to be held liable? It is up until the point they ceased being a direct infringer. That would be Arrow Manufacturing. If you go back before April 2007, then yes, bi-tech was liable at that point for inducement based on Samsung's direct infringement. If this was a case of damages, O2 could have sought damages for that, but they only wanted an injunction. An injunction is a prospective remedy. It's not supposed to be a punitive remedy based on some past act. It's supposed to prevent future infringement, prevent the irreparable harm of ongoing infringement, and there was just no evidence of that in this case. The district court actually looked at transcore and said that the exhaustion context of transcore was different from the indirect infringement context of this case. I think reasoning much as Judge Lurie just did. Why isn't that a very appropriate way to look at this? I disagree with his narrow analysis. If the right is exhausted when it gets to Samsung, Samsung is then authorized to do what it wants with the product. An authorized party under 271A is not a direct infringer by law. The fact that he couched in terms of only related to an exhaustion issue, this is exhaustion. Bi-tech is upstream, not downstream from Samsung. Right. Now, if Bi-tech was an upstream direct infringer, there may have been an issue because there would have been a separate basis to bring a case against Bi-tech, but as an inducer ... But Samsung is the direct infringer. But Samsung is not the direct infringer after April 2007. Well, that's the issue, of course. Yes. If you disagree ... They are a direct infringer if they violated the abide by clause. They are a direct infringer in the sense that they have committed the acts which constitute infringement even though they have a covenant that prevents them from being sued. I would disagree with your Honor's interpretation that if they violate the abide by clause, they necessarily become an infringer. At that point, I would say maybe they're a contract breacher, but there is nothing in in that agreement. Well ... Excuse me. Were they the same goods, the goods that Samsung infringed with respect to, and those for which Bi-tech is being held to be an infringer? Yes, they are the same goods. They are the same goods. But now, you say if they violated the abide by clause, they're not an infringer. See, your whole point is that they're authorized and therefore not an infringer under 271. Once they violate the terms of their agreement, they're no longer authorized. Then they become an infringer in every sense. The question here is the term authorized in 271, and they're not authorized if they violated the terms of their authorization. I would disagree with your interpretation of the Samsung agreement and would ask that you have a read of it again if you have the chance. I'm looking right at it. There is nothing in there that provides that if Samsung violates any term, that the agreement is void. In effect, there's a provision. If you violate terms of an agreement, the agreement is what? It's called breached. You're no longer authorized. But in this case, it's not necessarily void. There is a provision in that contract that requires Samsung to purchase a certain amount of product from O2. That's a later clause, but you're right. It comes after the abide by, but before the covenant not to sue. That specifically provides that if they don't make the requirement, they're allowed to make it up the next year. In fact, there are clearly remedies under this contract that if you don't comply with a term, it does not immediately render the agreement null and void. There are remedies. Are there terms to that effect in the contract that each of these provisions are severable and separately enforceable? Not to my recollection, no. That is a standard contract clause if that's the intent, isn't it? Yes, it is. And that doesn't appear, so we would presume that if they violate a central term of this authorization, they're no longer authorized. That seems to be what has happened that the district court has found in this case, finding them a direct infringer. But even if you find that logic, Your Honor, that injunction was vacated in 2008. So if you don't decide that Samsung's no longer an infringer in 2007, they're not an infringer in 2008 when the injunction they were supposed to abide by was vacated by this court. In 2009, there was no injunction to abide by, so how could Samsung have been an infringer even under that abide by clause? Is there anything in a double recovery that's involved here? Samsung making a hole for the infringement and then O2 Micro wanting to go after Bitex for the same goods? No, they could do that. That's error manufacturing. They could have gone after Samsung for damages for direct infringement and then after Bitex for inducing that infringement. It's because of their choice of remedy here and the fact that they released Samsung either in the April 2007 agreement or at least by April 2008 when the injunction was vacated and dissolved. If you'd like to save some of your retail time, Mr. McPhail. If I may, Your Honor, thank you. Thank you very much. Mr. Harkins? Thank you, Your Honor. May it please the court. While counsel noted that there were three issues in the case, the discussion that he had during this conversation only took into account the first of those issues, which is the issue of was there a direct infringement supporting the indirect infringement. As a result, we are willing to stand on the briefs on the other two issues if the court doesn't have any questions about the invoice error. He has not waived those arguments, Mr. Harkins, so why don't you proceed? Okay. All right. Well, then I will quickly touch on those issues and then head to the infringement. Under the scope of the injunction issue, which is the last of those issues, this is the case if you get what you ask for. Judge Everingham, actually O2 Micro had provided a form of injunctive relief and Vitek objected and submitted its own form of injunctive relief and then Judge Everingham accepted Vitek's own submission for the injunction. And under the case law that we've cited in the brief, mostly pages 36, 37, this clearly would constitute invited error under that doctrine and judicial estoppel and waiver such that it would be inappropriate for them to, without having given Judge Everingham an opportunity to correct anything. Vitek proposed the injunction. Why don't you move on to something else? Okay. And then on the sanctions, I think that this dovetails on the argument that we had before, but it's an abuse of discretion. The judge awarded sanctions. He did not award death penalty sanctions. Mr. Harkins, I'd like you to go back to the main point that we were discussing earlier. Okay. If O2 Micro only sought an injunction, which was vacated, sort of disposing of Samsung's direct infringement, why might Vitek still be liable with respect to inducement for the same goods? Right. So here's the issue is, there are two things that I think are getting conflated as to this issue of the license defense and direct infringement. As you heard during the oral argument by Mr. McPhail, there's an admission that the finding of infringement was supported and correct. The judgment of infringement was correct. There was an infringing act that took place 2004, predates any sort of agreement. That was a direct infringement that was induced by Vitek. That is enough to support the judgment. So that means this court must affirm the judgment. Now the question is, what do we do about the injunction? Well the injunction is supported because there has now been a finding of infringement. Now using a Vitek product in the United States is known to infringe. And that is something that should be enjoined, no matter who does it, whether it's Samsung or anybody else who does it. Now what they're saying is, if that's true, then the only thing that would happen in this case is the injunction might circumscribe Samsung. Just because a party, Samsung has, even if that was right, just because one party has stopped infringing because it has a license doesn't mean that they get to sell to whoever they want. If that was the case, the injunction still stands. They still have been found to induce infringement. Their products have been technically held to infringe. And therefore, the injunction still stands. At best there would be a carve out for Samsung, which we think is unwarranted. And the reason for that is because the Samsung deal was entered 11 days after the injunction in Vitek. It refers back to injunctions and says, you are not going to use these enjoined goods. But that injunction was vacated. That injunction was vacated in 2008, but the intent of the agreement and what the scope of the agreement is, is that when it was entered, was that you're not going to be using the Vitek goods. That was at the time that the parties, Samsung and O2, agreed. That's what it was. Are you saying that this contract remains in force even though the injunction that it refers to was vacated? What I'm saying is that the Samsung deal remains in force such that if any product is the subject of injunction, Samsung has to abide by that. So what we've just discussed- But the injunction is vacated. Is Samsung still obligated to follow the abide by clause? Under the abide by clause, Samsung would not be obligated at that point. But that doesn't affect the finding of inducement because that was based on a prior infringement. And what we've just discussed is that if the injunction is good, again, it has to be issued because there is an act of infringing that is admitted by the other side at this point. So that infringing act supports the injunction. When an injunction issues, that means Samsung has to follow it. What is the infringing act? The original purchases. The 2004 infringement that was found in this case. That was admitted. There was direct infringement. Mr. McPhail just said it in his opening oral argument. He said it twice in his opening oral argument. There was an act of direct infringement. That supported a finding that Vitek induced. Once there was a finding that Vitek induced, the question is, is an injunction the appropriate remedy? Well, it is because Vitek products infringe. Now, the question is, does Samsung have a loophole about buying these products going forward because there was a time when the injunction wasn't there? I don't think that's a fair read of the agreement. Additionally, the agreement was not framed as an affirmative license. I actually think that the case that's better suited to this is the Jacobs versus Nintendo of America case. It distinguishes between affirmative license language and negative covenant not to sue language. And what the parties intended to do here, this language is not in transcore and doesn't relate to any of the cases that we've seen, which is that the parties actually say in the agreement, if we find somebody infringing out there, we're not going to go after you, Samsung, because anymore. We're not going to sue you about these. Let me just ask you. It seems a little circuitous to me. I mean, when we're talking about the injunction referenced in the agreement, at first you're saying that injunction has to be the previous injunction. That was the one in effect. That was the one the party's relying on. It seems to me, for the current issue, you're acting as if that injunction is the injunction that's in dispute right now. I'm not, actually. And thank you, Your Honor, for allowing me to clarify that point. What I'm saying is that there was no agreement with Samsung at all of any kind when it sold bi-tech products in the United States. Mr. McPhail has admitted that was an act of direct infringement. That supports a judgment of inducement by bi-tech. And that's not even challenged here. That means we're entitled to relief. We're entitled to stop bi-tech from selling its products in the United States. That violates, to any party, not just Samsung, but any party. Mr. McPhail's point there is that if you had sought damages for what had occurred in 2004, that would have been an appropriate remedy. An injunction going forward from this point of time is dealing with ongoing infringement, and you've presented no evidence of ongoing direct infringement. I think that's Mr. McPhail's point. One of the issues here is proving ongoing direct infringement. That's never actually the case. When an injunction is entered, it's because the product has been infringed in the past, and you're stopping it from being infringed in the future. But there's a five-year gap here. So the question is whether what happened five years ago can support an injunction in 2009. Right. So unquestionably, bi-tech, there's evidence that's in the record that's cited in the findings of fact. Bi-tech has positioned its products to sell in the United States. It wants to sell its products in the United States. If they sell the products in the United States, they infringe, because that's admitted in this case. I'm a little confused now. You just said it wouldn't be, the injunction goes to stopping infringement in the future. Right. And I thought Mr. McPhail's point was, and maybe I'm missing something, is that there's not going to be future infringement, because under this agreement, there can no longer be direct, and therefore, there can no longer be inducement. That was only as to Samsung. Right. Bi-tech sells its product, wants to sell its products in the United States. It has sold its products in the United States. It's sold its products, and it would be unfettered. Even if Samsung was allowed to sell products, other companies would not be allowed to sell bi-tech products in the United States. Their evinced intent to sell into the United States, the only reason that there's not additional evidence of this is because for vast periods of this time, they've been enjoined from doing it. But they have every intention of selling in the United States. Mr. McPhail doesn't say, we should not, he's saying we should be able to sell. I don't understand why that's responsive to my point, though, in terms of ongoing infringement. We've got Samsung here and LJ. Those are the evidence of what they used in the past. Yes. So in terms of the injunction, presumably, the injunction issued in this case would be connected to the infringing condom. It's a growth of that. You don't get to do other things as well, right? I mean, wouldn't the injunction be tied to the past infringement by Samsung in 2004? Once you have, what happened in this case is the parties reached a bunch of stipulations at the trial court level. Do you understand my question? I do. I do. I'm really trying to approach it here. But what the past infringement is admitted in this case, that there was an infringing act. Biotech has professed that it plans to sell into the United States, not just to Samsung, but to parties generally. Well, that's when an injunction is intended to stop. They've already been found to be a direct infringer. And you're saying, well, yeah, but they were found to be a direct infringer with Samsung. Well, in fact, what the court found is all the accused products were guilty of infringement. That's what the findings of fact say. So, and there's an implicit finding that that includes LG as well. But as long as there's any finding, a valid finding of infringement, then that can serve as a basis to say, if you're going to keep doing that act that infringes generally, you want to just open your sales to the market, you can't do that. That's enjoined activity. And once there's any injunction entered against Biotech, the Samsung agreement says it applies to Samsung too. So the abide by clause in Samsung's agreement was really directed at Biotech? It was absolutely directed at Biotech. It was 11 days after the, the Biotech was sued for the Samsung products. Samsung was sued for products including Biotech chips. And it was to ensure that you would have an ongoing hook to enjoin their infringement? That's correct. That's the fair read. And in fact, I mean, this is one of the differences beyond that. This is one of the differences between, this is. So therefore, you are saying that the injunction, the abide by clause, which is where I started in my questioning, and I may not have been clear, but initially you were saying the intent of the parties, they were looking at the injunction that was in effect in 2007 that was ultimately vacated by this court. Now you're saying that the injunction in that agreement is going to be the injunction that was entered in this case. The injunction that was in that, the injunction was referenced in that agreement. The injunction that's at issue here today is going to be there, then imposed as being the injunction in the agreement. The injunction, right, that exists today. The other terms. Sorry, Your Honor. The injunction that exists today that I'm asking for affirmance of means that Samsung cannot sell the products because it's an injunction. Samsung's not allowed to sell the products. Samsung's actually not allowed to sell the products no matter what. It's just that the agreement that O2 Micro and Samsung actually reached was about who O2 Micro could actually bring to court about this. This was not an affirmative license. This was a covenant that said, well, Samsung, for your peace of mind, we won't sue you about your infringement. You can continue to infringe. We won't sue you about it, but we will go after your supplier because they are the ones that are actually responsible for the infringement. The chief earlier asked about the district court's analysis that TransCorp did not apply here because it wasn't an exhaustion case. If we disagree with that, doesn't that affect what we have to do? I don't think so, and the reason is because TransCorp, by its own language, and even Quanta versus LG, this is a judicial doctrine of patent exhaustion. It's only ever been applied as a prospective measure. Well, let's just say, no, but assume for a moment that we disagree with your analysis and we think TransCorp applies here. In other words, there's a symmetry between a license and a covenant not to sue. Where does that lead us in terms of disposing? Even in that instance, patent exhaustion has only been held to exhaust your ability to go after people downstream. It's never been held to exhaust your ability to go after the people that induced those acts of infringement. So, the whole point, and this is actually pointed out in the Jacobs versus Nintendo of America case, that the rationale for exhaustion and a covenant not to sue is, if I tell you as a covenantee, you're not going to get embroiled in litigation, I'm not going to go after you in court, then it's not fair for me to go after your customer who's just going to ask for you to indemnify them. And that's actually the statement in the case. None of that applies when you're going after the source. The policy rationale behind the entire exhaustion doctrine doesn't apply to upstream sources. In other words, this was not a license. This was not a license. I mean, by its own language, and the fact that it says, by the way, Samsung, what this was, it gave market reality to the situation, which was, it said, Samsung, we're in a lawsuit with you. We'll stop going in a lawsuit with you because we realize you're not the one who decides if this design is going to infringe or not. These are a little chip that goes on a little circuit board that's one piece of a big monitor. And we realize that it's really the supplier who decides whether they're going to do the infringing thing or not. So rather than continue to drag you into court as the direct infringer, we're not going to give you a license, but we won't actually sue you on it. We'll go after the source. So your act is infringing, but we won't bring you into court about it. We'll go after the source. In the context of something that says, we will covenant not to sue you, but if we get injunctions against your suppliers, you have to abide by that, that is not covered by any of these other cases that talk about patent exhaustion. That is a conditional statement. And actually, transcore has never been held to apply to condition, even in the license context, it's not been held to apply to conditional licenses. You're allowed to have restrictions on the licenses or the covenants that you get. Even transcore at 1276 says, patent license agreements can be written to convey different scopes of promises not to sue. And our scope of the promise not to sue was, we promise not to sue you for the act that is infringing, but we're allowed to go after your suppliers for it, and you'll abide by that. And that allows Samsung to not be embroiled in the lawsuit, and allows Otomicro to go after its infringers and know that Samsung will abide by that. And what's happened here is Biotech is trying to utilize that market reality, that language that is about the covenant not to sue, and say it created a loophole, and we just disagree with that. Thank you, Mr. Harkins. Mr. McVail, you have two and a half minutes. Thank you. I would actually just like to touch on three points, if I may, unless there's any questions from the court. The first thing is, I think that O2's reliance on Jacobs is misplaced. The panel in transcore, I think, made it clear that the Quanta opinion from the Supreme Court overruled Jacobs. So I think their reliance on Jacobs as being controlling law is misplaced here. Two, Mr. Harkins overstates our admission of direct infringement. What I am saying is, based on the record below, there was evidence of direct infringement. But we all know that because of the court's sanction precluding Biotech from putting up its technical infringement expert, that it was a done deal that there was going to be infringement below. We don't have evidence that the chip doesn't infringe, because we weren't allowed to put that evidence on. Yeah, but you only prevail on that count if you get us to reverse on the issue, the other issue that you hadn't raised, didn't raise here. Correct. Correct. And finally, Mr. Harkins talks a lot about what the agreement was intended to cover and what it was meant to cover, but these were sophisticated parties. O2 was suing Biotech, Samsung had been sued by O2 because of Biotech. And yet, as the district court found, Biotech is never mentioned in that agreement anywhere. If they really meant it to block Samsung from buying Biotech chips, then they should have put it in there. Instead, they put in these nebulous clauses and now contend it was meant to cover the old injunction, then the new injunction, then any injunction in between. If they wanted to do it, it was their obligation to make it clear. They should not be allowed to use this ambiguity to try and create conditions in this contract to make Samsung out to be an infringer when it is not. And with that, I'll see the rest of my time. Thank you. Thank you, Mr. McPhail. Our last argument.